**RICHARD A. MINCER, #6-2886**
**TRACI L. LACOCK, #6-4009**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 400
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
rmincer@hirstapplegate.com
tlacock@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JO ANN PAULI, individually, and as Personal Representative of the Estate of Gerald T. Pauli, deceased, | } } } } | |
| Plaintiff, | } } } | |
| vs. | } } } | Civil No. CV-15-06S |
| SEARS, ROEBUCK AND CO., a New York corporation; SPIRIT DELIVERY AND DISTRIBUTION SERVICES INC., a New Jersey corporation; and HERITAGE COURIERS, LLP, a Colorado limited liability partnership, | } } } } } } } | |
| Defendants. | } } | |

## *PLAINTIFF'S RESPONSE TO DEFENDANT SPIRIT'S MOTION FOR SUMMARY JUDGMENT*

Jo Ann Pauli ("Plaintiff") hereby submits her *Response to Defendant Spirit's Motion for Summary Judgment* as follows:

Federal Rule of Civil Procedure 56 requires a movant to show by competent evidence that there is an absence of material fact on the issues presented and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. As shown below, Spirit has failed to carry its burden on any of the issues presented.

I.        **Spirit owed a legal duty to the Paulis**

A. **Duty to properly install the washing machine.**

Spirit asserts that the Plaintiff did not assert a claim for vicarious liability. While there is not a separate claim specifically denominated as such, the allegations in the Complaint are sufficient to state such a claim. A claim for vicarious liability can come in many forms, but, in a respondeat superior context, is generally that the party hired another person or party and the person was anegligent while acting in the course and scope of the employment. Those facts were sufficiently pled in the Complaint. In addition, the Complaint asserts Spirit negligently hired Heritage, which is an alternative basis to find a party vicariously liabile where the employee is otherwise an independent contractor.

As Spirit notes in its Motion, the Complaint asserts that Spirit owed a duty directly to the Paulis. This allegation obviously rests on a vicarious liability theory as well as the Paulis status as an intended third-party beneficiary of the Sears/Spirit contract. The Complaint also asserts that Spirit hired Heritage to deliver and install the washing machine. Complaint at ¶11. Spirit admits that allegation. Paragraph 13 then asserts that Spirit failed to properly secure the drain hose. See also ¶¶16, 18-20, 28, 33, 34, . Obviously, a company can only act through its employees. Paragraph 37 also alleges that Heritage and Spirit were acting in the course and scope of the engagement with Sears. Obviously, as described below, the engagement with Sears necessitated Spirit's engagement of Heritage.

"In any pleading that sets forth a claim for relief, a party must provide "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for

-2-

judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). These requirements ensure that the complaint "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Huggins v. Hilton*, 180 Fed. Appx. 814, 816 (10th Cir. Colo. 2006). Spirit had such notice. The statute of limitations has not yet run. Spirit's hiring, training, supervision, control of and relationship with Heritage has been an issue in discovery throughout this case. Spirit took care to characterize Heritage as a "contract carrier" in response to Interrogatory 6 knowing that it may be vicariously liable for Heritage's negligence. See also Interrogatories 5, 7, 8, 9. 11, RFA 2 ("Admit that Heritage Couriers was your agent with respect to the delivery and installation of the washing machine to Plaintiffs on 12/19/12.") attached, and the Spirit 30(b)(6) deposition. The claim that Spirit was vicariously liable for Heritage's negligence comes as no surprise to Spirit. If the Court requires a more direct assertion in the Complaint, then Plaintiff should be granted leave to so amend the Complaint

### 1. Vicarious Liability

Otherwise, Plaintiff agrees that no one who was nominally a Spirit employee delivered or installed the Paulis' appliances. Plaintiff's claims against Spirit primarily rise or fall on whether Spirit is vicariously liable under the doctrine of respondeat superior or otherwise for the actions of Heritage and its other "contractors." As discussed in detail in *Plaintiff's Motion for Partial Summary Judgment*, the undisputed evidence shows that Spirit retained and exercised sufficient control over Heritage to destroy any claimed independent contractor relationship thereby rendering the relationship with Heritage one of employer-employee. Once this employer-employee relationship is established, either via summary judgment or at trial, then Spirit is vicariously liable for all of Heritage's negligence. As such, the Paulis do not allege, nor

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

is it necessary to prove, that Spirit owed a duty with respect to the delivery and installation of the washing machine separate and apart from the delivery team.

There is no dispute that the individuals who delivered the washing machine had a duty to exercise reasonable care in the delivery and installation.   More specifically, that duty required the delivery team to secure the drain hose such that it would stay in the drain pipe and not release water into the Pauli residence.   Further, Spirit and Heritage agreed to install appliances per the manufacturer's instructions, which, in this instance, required the use of a bracket to secure the drain hose in place.   There is no dispute that the delivery team breached this duty and caused damage to the Paulis.   The undisputed facts show this and it has also been established via the default entered against Heritage.   There is also no question that Heritage was acting within the course and scope of its employment with Spirit when it negligently installed the Pauli's washing machine.

### 2.  Intended Third-party Beneficiary

As discussed in Plaintiff's Motion for Partial Summary Judgment, Sears had a contract with the Paulis wherein it promised to properly install the washing machine.   Sears cannot escape liability to the Paulis simply because it delegated the installation to another party. Plaintiff addressed the apparent agency of Heritage in detail in that motion, but it is also a well-established principle of contract law that one who delegates a contractual duty remains liable for breach of that duty.  *See Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶ 17 (Wyo. 2015) (citations omitted).

> Rights are assigned; duties are delegated. When a right is assigned, the assignor ordinarily no longer has any interest in the claim. When a duty is delegated, however, the delegating party (delegant) continues to remain liable. If this was not so, every solvent person could obtain freedom from debts by delegating them to

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

an insolvent. Delegation involves the appointment by the obligor-delegant of
another to render performance on the obligor's behalf. It does not free the obligor-
delegant from the duty to see to it that performance is rendered, unless there is a
novation.

*Id.* (quoting JOSEPH M. PERILLO, CONTRACTS, § 18.25, 665-666 (7th ed. 2014)).[1]

It appears the level and detail of control that Sears required of Spirit was largely
in recognition of its ongoing obligation to its customer. The contract spells out the terms of this
delegation of duties.

It follows that the Paulis, as Sears' customers, were an intended third-party
beneficiary of the Sears/Spirit contract. Spirit ignores that it cannot escape liability for breach of
the duties it assumed under this contract by delegating these duties to a third-party. In fact, the
contract provides as much. *See* Ex. 8 to *Memorandum of Law in Support of Plaintiff's Motion
for Partial Summary Judgment Against Sears, Roebuck and Co. and Spirit Delivery and
Distribution Services, Inc.* filed on December 21, 2015 [*"Plaintiff's Memorandum of Law"*] at 6.
Spirit correctly identified the test to determine if a party is the intended third-party beneficiary to
a contract; however, Spirit incorrectly applies the facts to the law.

Wyoming has adopted RESTATEMENT 2D OF CONTRACTS § 302 to determine
intended third-party beneficiaries to a contract, including § 302(1) which provides, in part, that

---

[1] The *Pennaco* Court also included the following additional authority for this proposition: ARTHUR L.
CORBIN, CORBIN ON CONTRACTS, § 49.6, 206 (revised ed. 2007) ("If a party assigns his right and
delegates his duty under a contract, he no longer has any right, but he remains liable as a surety for the
performance of the duty."); E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 11.10, 127 (3rd
ed. 2004) ("a delegation of a performance does not relieve the delegating party of 'any duty to perform' or
of any 'liability for breach.'"); SAMUEL WILLISTON, WILLISTON ON CONTRACTS, § 74.27, 412-413 (4th
ed. 2003) ("one who owes money or is bound to any performance whatsoever cannot by its own act, or by
any act in agreement with anyone else ... divest itself of the duty and substitute the duty of another.");
RESTATEMENT (SECOND) CONTRACTS, § 318(3), 319 ("Unless the obligee agrees otherwise, neither
delegation of performance nor a contract to assume the duty made with the obligor by the person
delegated discharges any duty or liability of the delegating obligor."). *Pennaco Energy*, 2015 WY 152 at ¶
17.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

"[t]he performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *See Richardson Assocs. v. Lincoln-Devore*, 806 P.2d 790, 807-08 (Wyo. 1991)When analyzing whether a party is an intended third-party beneficiary, "the intention of the parties is to be gleaned from the contract and the circumstances surrounding its execution." *Cordero Mining Co.v. United States Fid. & Guar. Ins. Co.*, 67 P.3d 616, 621 (Wyo. 2003) (internal citations omitted).

From even a casual reading of the Sears/Spirit contract, it is apparent the primary intent is to promote and protect the Sears brand by making sure Sears' duties to its customers are appropriately performed by Spirit. See generally Ex. 8 to *Plaintiff's Memorandum of Law.* The target audience, of course, is the Sears' customer. The contract imposes various requirements to achieve this goal.[2] As discussed more fully in Plaintiff's Motion for Summary Judgment, Sears wants its customer to believe the delivery teams are Sears' representatives. Obviously, Sears wants its representatives to be well-trained and supervised and they must properly hook-up the customer's appliances. The delivery company must perform "[s]ervices in a prompt, safe and workmanlike manner, with due care, and in accordance with the standard of performance exhibited by highly-skilled transportation professionals operating on a nationwide basis. Delivery Company will hook up all appliances according to manufacturers' instructions." *Sears/Spirit Contract* at 1; *Spirit Depo.* at 14-15, 18-20, 22, 25-27 (attached as Ex. 5 to

---

[2] The contract's intent to promote the Sears' brand was discussed in the Plaintiff's Motion. These obligations included the following: All delivery teams were required to wear uniforms, including shirts and jackets with the Sears' emblem. *Sears/Spirit Contract* at 18. Spirit had to conduct criminal background checks on all delivery personnel. *Id.* at 1-2. Sears retained the right to approve all subcontractors. *Id.* at 5. Spirit agreed to ensure that its delivery teams were adequately trained to perform deliveries. *Id.* Delivery teams were required to run delivery routes exactly as they were specified by Sears. *Id.* at 14.

- 6 -

*Plaintiff's Memorandum of Law*).  To follow the manufacturer's instructions, the drain pipe must be secured.  *Spirit Depo.* at 99.  Obviously, improperly hooking up the customer's appliance may cause damage to the customer or his property and reflects poorly on the Sears brand.

Sears also wants the customer to have a good experience with delivery personnel. For example, the delivery personnel must "act in a friendly, professional and courteous manner with the Customers," *id.* at 1; criminal background checks must be performed on "all individuals who enter the Customer's residence," *id.* at 2; delivery personnel must be covered by a dishonesty and fidelity bond, *id.* at 3; the contracts requires special steps to be taken to protect confidential personal information of the customer, *id.* at 8; the delivery teams must take steps to protect all merchandise, *id.* at 14; there is a whole section dedicated to Entry into Customer's Premises, id. at 14-15; the contract addresses what can and cannot be done as far as removing doors, windows, and other parts of the premises, *id* at 15; Customers may not be allowed to carry merchandise or assist with the hook-up, *id.* at 15; the delivery team will disconnect old appliances even if the customer has failed to do so, *id.* at 16; and any damage to the Customer's property must be reported immediately, *id.* at 16, among others.  Simply put, it is evident from the face of the contract that Sears and Spirit very specifically intended that numerous steps be taken to ensure that Sears' customers have a safe, friendly, courteous, and professional experience that results in a properly installed appliance with no damage to the customer's person or property.  It is very apparent that the intended beneficiary of these contractual obligations is the Sears' customer.

When Spirit breached its contractual obligations, the Paulis suffered damages— not Spirit or even Sears (except perhaps to its brand).

- 7 -

Spirit argues that illustration 16 to RESTATEMENT 2D OF CONTRACTS, § 302 is identical to this situation. The illustration provides, "B contracts with A to erect an expensive building on A's land. C's adjoining land would be enhanced in value by the performance of the contract. C is an incidental beneficiary." RESTATEMENT 2D OF CONTRACTS, § 302 cmt. e, illus. 16 (2nd ed. 1981) This illustration is not even close to the situation in this case. If the Paulis' neighbors suffered damage to their property due to the flooding, then perhaps illustration 16 might apply.

Rather, this case is much more similar to llustration 10 to § 302.

A, the operator of a chicken processing and fertilizer plant, contracts with B, a municipality, to use B's sewage system. With the purpose of preventing harm to landowners downstream from its system, B obtains from A a promise to remove specified types of waste from its deposits into the system. C, a downstream landowner, is an intended beneficiary[.]

*Id.* at cmt. d, illus. 10.

Spirit's argument ignores the nature of the contractual warranties in the subject contract. Here, Sears contracted with Spirit to deliver and set up appliances in its customers' homes. As is discussed more fully above, the warranties in the contract were intended to ensure the proper installation of the appliances and safeguard the Sears' customer from harm. Any breach of those warranties harms the Sears' customer. There is nothing incidental about this relationship.

Simply put, Spirit has completely failed to show an absence of material fact with respect to whether it had a duty to properly install the washing machine via its contract with Sears and/or its relationship with Heritage. Spirit's Motion with respect to this duty should therefore be denied.

- 8 -

### B. Duty to properly remedy the situation once notified of the flood.

Spirit raised the issue that perhaps the Pauli's were negligent in fialing to call ServPro or some other company to clean up the water after the flood. If there is such a duty, it also exists for Spirit and Sears, who both failed to remedy the water damage at the Pauli home created by the flood after they were notified of the same. After the Paulis called Sears, Sears called Spirit and Spirit sent another delivery team to respond to the Pauli home. This team did nothing to remedy the water damage caused by the flood and did nothing to prevent further damage and potential injury from the water that soaked the Pauli home. Had Sears and Spirit properly attempted to mitigate the flood, Mr. Pauli's second fall may never have occurred. Therefore, Sears and Spirit owed an additional duty to the Paulis to act reasonably under the circumstances once they were notified about the flood.

### II. The proximate cause of Mr. Pauli's falls was the flood caused by the negligent washing machine installation.

Heritage's failure to answer establishes duty, breach, and proximate cause as it relates to liability. "The entry of default generally forecloses the party found to be in default from making any further defense or assertion with respect to liability or an asserted claim. Although the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief." *McGarvin-Moberlyy Constr. Co. v. Welden,* 897 P.2d 1310, 1313-1314 (Wyo. 1995) (citing *Vanasse v. Rogers,* 847 P.2d 993, 996-97, (Wyo. 1993) (internal citation omitted)). Therefore, Heritage's default establishes that Heritage's negligence was a proximate cause of Mr. Pauli's falls and resulting injuries and damages. To hold otherwise now would result in an inconsistent verdict. As argued in *Plaintiff's Motion for Partial Summary Judgment Against Sears and Spirit,* once the Court

- 9 -

determines Sears and Spirit are vicariously liable for Heritage's negligence, all that will be left for the Court to determine will be the amount of damages.

Equally important, the material facts show the improper installation of the washing machine was the proximate cause of Plaintiffs' injuries and damages. For purposes of Spirit's Motion, it has once again failed to show an absence of material fact with respect to proximate cause.

Mr. Pauli slipped and fell in water on two different occasions. There is no suggestion that he fell for any reason other than water on the floor and that that water came as result of the negligently installed washing machine. The delivery team delivered the washing machine on December 19, 2012 and failed to affix the drain hose. *Gerald Pauli Depo*. at 83, **Ex. 1**; *Terry Pauli Depo*. at 41-42, **Ex. 2**. Ten days later, the Pauli home flooded due to the washing machine drain hose not being affixed. *G. Pauli Depo*. at 73. Both Mr. and Mrs. Pauli testified about the overwhelming amount of water caused by the flood. *G. Pauli Depo* at 69-70, 79; *Jo Ann Pauli Depo*. at 38-41, **Ex. 3**. The Paulis' home suffered significant water damage totaling approximately $30,000. Mr. Pauli testified multiple times that the water on the floor was the cause of his falls. *G. Pauli Depo*. at 71, 73-74, 91-92. While Mr. Pauli did not recall the exact mechanism of his falls or which way he fell, he knew that both times he fell because of the water on the floor. The negligently installed washing machine was the source of the water.

On December 29, 2012, Mr. Pauli was standing in water and fell while unplugging the washing machine. Mr. Pauli testified that he slipped. *Id*. at 73-74. The second fall, on January 5, 2013, Mr. Pauli slipped because of the water that was coming up from the seams of the flooring. Mr. Pauli testified,

- 10 -

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

And I don't know whether I reached for it (the shelf), whether it was going up and down, but I fell. And she (Mrs. Pauli) came out and – I hollered at her, and she come out there. And I rolled over and she says, **'My God there's water on the floor." From the pantry, this way, there was a seam on the floor that they had put it together with the linoleum. And that's where the water coming out. There was water under the – that had gotten under there that we didn't know about.**

*Id.* at 91-92 (emphasis added).

*Anderson v. Duncan*, 968 P.2d 440 (Wyo. 1998), relied on by Spirit, is easily distinguished from this case. *Anderson* was a case where the evidence revealed several different potential causes for the plaintiff's fall. *Id.* at 441. Obviously, a Plaintiff must prove that the injury was caused by the negligence of the defendant. In *Anderson*, the Plaintiff testified she was walking in the dark and fell not knowing what caused her fall. *Id.* at 442. There were a variety of potential causes that could have contributed to plaintiff's fall including untrimmed trees, crab apples, insufficient lighting, and failure to replace a handrail. *Id.* at 441. The Wyoming Supreme Court affirmed the lower court's finding that "Anderson failed to present evidence of a causal connection between the negligent acts and her fall." *Id.* at 443. In short, plaintiff's fall may have been caused by either a negligent act or a non-negligent condition, but she did not know which and could not carry her legal burden. Unlike *Anderson*, it is apparent from Mr. Pauli's testimony that the only cause of his falls was the water on the floor.

This case is more similar to *Queen v. TA Operating LLC*, 10-CV-170-F, where the Court held that there was sufficient evidence of causation. In *Queen*, the plaintiff, a semi-truck driver, stopped at a TA truck stop for the night. Mr. Queen was returning to his truck after looking at potential damage to his trailer when he slipped on a patch of ice in the TA truck stop parking lot that had been plowed. Mr. Queen was unsure how he fell. TA Operating, LLC

- 11 -

moved for summary judgment contending the plaintiff failed to establish causation because the plaintiff was unsure how he fell, citing *Anderson* and *LeGrande* as applicable precedent. *Id.*

Judge Freudenthal distinguished these facts from *Anderson*, because the ice was the only plausible reason for Plaintiff's fall, and while plaintiff did not know exactly how he fell, he testified he had "slipped." *Id.* The Court held, "although he (plaintiff) did not see exactly what he slipped on, and whether there was ice at that particular place, the evidence permits a **reasonable inference** that there was ice throughout the parking lot." *Id.* (emphasis added).

In this case, the water from the washing machine drain hose is the only reason Mr. Pauli slipped and fell. There is ample evidence to support that conclusion, especially at the summary judgment stage. In fact, the factual evidence here is arguably stronger than in *Queen*. Since we know the two falls occurred in water from the washing machine. *G. Pauli Depo.* at 71, 73-74, 91-92. Spirit focuses on the mechanism of Mr. Pauli's falls; however, that is the incorrect analysis. Regardless of the **exact** mechanism of Mr. Pauli's falls, he slipped and fell in water. Furthermore, the Court in *Queen* held that the plaintiff testifying that he had "slipped" was sufficient to establish how he fell. *Queen*, 10-CV-170-F. Mr. Pauli testified that during both falls he slipped. *G. Pauli Depo.* at 73-74 and 92.[3]

Spirit seems to suggest that circumstantial evidence cannot establish proximate causation, but that is contrary to law. For example, in *Allen v. Wal-Mart Stores, Inc.,* 241 F.3d

---

[3] On December 29, 2012, Mr. and Mrs. Pauli encountered a substantial amount of water. Mr. Pauli does not know exactly how he fell, but when he got up he was soaking wet. *G. Pauli Depo.* at 73-74. On January 6, 2013, Mr. Pauli fell a second time. Again, Mr. Pauli was not sure of the exact mechanism of his fall, but when he fell he was wet on his back. *Id.* at 91-92. Mr. and Mrs. Pauli then noticed the water coming up from the seam of the linoleum. *Id.*; *J. Pauli Depo.* at 48. At the time of the first fall, Mr. Pauli was standing in a flooded house and when he got up he was soaking wet. After the second fall, Mr. Pauli and Mrs. Pauli both noticed water coming out of the flooring and his clothes were wet from the water on the floor. Not only is there ample circumstantial evidence that he fell because of the water from the washing machine, it is the only reasonable inference that can be drawn from the facts.

- 12 -

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

1293, 1295 (10th Cir. 2001), plaintiff alleged that while she was shopping at Wal-Mart, a bunch

of boxes fell on her causing her to fall.  Just prior to the fall, plaintiff saw a Wal-Mart employee

putting boxes on a lower riser, but did not actually see the Wal-Mart employee push the boxes

off of the shelf.  *Id.* at 1295.  Wal-Mart argued it was entitled to judgment as a matter of law

because plaintiff failed to show causation, citing *Anderson* in support of its argument.  *Id.* at

1296.  The *Allen* court distinguished *Anderson*, noting the trial court found that "the [*Anderson*]

plaintiff had failed to produce *any* evidence circumstantial or otherwise that the defendants'

negligent acts caused her fall."  *Id.* (internal citation omitted).  "While Allen has produced only

circumstantial evidence, it is nevertheless 'evidence of probative force' and a reasonable jury

could reasonably infer causation based on that evidence."  *Id.* at 1297 (emphasis added).

   This case is also distinguishable from the facts in *LeGrande v. Misner*, 490 P.2d

1252 (Wyo. 1971).  In *LeGrande,* plantiff walked to defendant's business for breakfast without

incident.  *Id.* at 1252-53.  It had snowed approximately 2-4 inches and was icy.  *Id.*  Upon

leaving defendant's restaurant, the plaintiff alleged she slipped and fell on the sidewalk in front

of defendant's business.  *Id.* at 1252.  The plaintiff fell, but it was unclear whether she fell in the

shoveled or unshoveled portion of the sidewalk.  *Id.* at 1254.  Plaintiff did not recall if anyone

had shoveled their sidewalks on the 2 ½ block walk to defendant's restaurant.  *Id.*  Additionally,

there was no showing made that the sidewalks were improperly shoveled.  *Id.*

   *LeGrande* is completely different from this case, because here Mr. Pauli slipped

and fell in water caused by the negligent installation of their washing machine.  There is no

evidence of any other reasonable cause for Mr. Pauli's falls.  Mr. Pauli testified "the (drain) hose

was plum out of the drain, and it was just flying back and forth, shooting water out."  *G. Pauli*

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

*Depo.* at 73. There is also ample testimony about how the flood soaked the Pauli residence, water was seen coming out of the floor at a seam in the linoleum, Mr. Pauli's second fall occurred on or near that seam, and his clothes were wet after the second fall.

Plus, unlike in *LeGrande*, where there was no evidence of defendant's negligent shoveling; here there is no question the washing machine installation was negligent because of the failure to affix the drain hose. Subsequently, due to that negligent installation, the Pauli home flooded and Mr. Pauli fell twice in the water resulting in a broken back and exacerbating his neck condition. There is significant evidence, both direct and circumstantial, that the flooding caused by the negligent installation of the washing machine was the proximate cause of Mr. Pauli's falls. No speculation or conjecture is required to determine the proximate cause of Mr. Pauli's falls. Therefore, Spirit's motion for summary judgment for lack of causation should be denied since it has failed to show an absence of material fact.

### III.   Mrs. Pauli's loss of consortium claim survives

Plaintiff agrees that Ms. Pauli's consortium claim is derivative of Mr. Pauli's claims. If his claims survive summary judgment, so does the loss of consortium claim.

### IV.   Plaintiff's negligent hiring claim survives summary judgment

The negligent hiring claim may well be superfluous if the Court finds that Spirit destroyed its claimed independent contractor relationship with Heritage and, as such, is vicariously liable under a *respondeat superior* basis. If the Court makes such a finding at the summary stage, this claim can be dismissed as superfluous. But, if the Court finds questions of fact with respect to whether Spirit exercised the requisite control, then there is a sufficient basis to deny Spirit's Motion on the negligent hiring claim. Plaintiff presented evidence in its *Motion*

- 14 -

*for Partial Summary Judgment Against Sears and Spirit* that Spirit and Heritage were engaged in an employer-employee relationship. *See* [Dkt 47].

As for evidence of negligent hiring, Spirit is correct that the evidence is scant at this point, but the reason it is scant is because of Spirit's own spoliation of evidence and failure to adequately prepare its 30(b)(6) witness on relevant topics. Plaintiffs have not yet filed a motion for sanctions for these discovery issues since it is entirely possible this issue may be moot.

Nevertheless, the evidence we have supports a negligent hiring claim. First, Heritage was terminated after only seven months on the job. Spirit hired Heritage in May 2012 and terminated them on December 21, 2012. *Spirit Depo.* at 71. This fact alone suggests Heritage was not competent to perform delivery services in accordance with industry standards and Sears' and Spirit's expectations.

Additionally, during the delivery of the Paulis' appliances, Heritage employees told Terry Pauli (Mr. and Mrs. Pauli's son) that they installed "hundreds if not thousands, of them (washing machines) and it (the bracket for the drain hose) wasn't necessary." *T. Pauli Depo.* at 41. There is no dispute that this falls below the standard of care.

Spirit also failed to comply with its own requirements for training, supervising and monitoring Heritage. For example, Spirit required its delivery teams to sign off that they read, understood and received a copy of Spirit's Best Practices Manual. *Spirit Depo.* at 59. However, Spirit claims that it does not have any documentation that Heritage received, read, or acknowledged Spirit's Best Practices Manual. *Id.* at 49. Additionally, Spirit did not require Heritage or any of its other contractors to sign off that they completed training. *Id.* Spirit did not

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

keep track or document in any way that their delivery teams were in fact able to hook up appliances according to manufacturers' instructions. *Id.* at 26. Spirit also testified that Heritage's performance of the contractual obligations is largely unknown. *Id.* at 107.

Spirit could have and should have either produced such evidence or produced a 30(b)(6) witness to explain whether such obligations were met. It did neither. This information could have easily been obtained from Spirit's Location Control Manager, Mitchell Smith. Mr. Smith was terminated from his employment with Spirit in 2013. However, Spirit did not do anything to locate Mr. Smith and speak with him in preparation for the 30(b)(6) deposition. *Spirit Depo.* at 108. Therefore, Spirit was unable to testify regarding any specifics of Heritage's hiring, background, training, or performance while employed by Spirit.

Spirit had processes in place, but Spirit cannot tell us if Heritage went through any of those processes. There is no evidence of "reasonable care" taken to specifically hire Heritage, only a blanket policy that Spirit believed Heritage would have gone through. Spirit knew nothing about whether Heritage was qualified to deliver and install the Paulis' appliances

In its Motion, Spirits repeatedly argues how things are typically done in the Denver center, but offers no evidence of what was actually done. In that respect, it has again failed to show an absence of material fact through competent evidence. Yet, from the evidence that has been presented, one reasonable inference that can be drawn is that Heritage simply did not know how to properly install a washing machine. In fact, ample evidence exists to suggest that it did not and there is no evidence to show that Spirit adequately trained Heritage how to do a proper installation, despite the fact that Spirit agreed to assume such duties in its contract with Sears and otherwise exercised pervasive control over contractors such as Heritage.

- 16 -

Again, Plaintiffs agree there is only a minimal amount of evidence regarding Spirit's negligent hiring of Heritage; however, this is only because Spirit did not produce such evidence—in its Rule 26 disclosures, through written discovery responses, through an adequately prepared 30(b)(6) representative, or even at the summary judgment stage. If necessary, Plaintiff will confer with Spirit's counsel in preparation for bringing a motion for sanctions. As discussed above, this claim may be moot; if not, Spirit has not produced any evidence showing summary judgment should be granted and even the scant evidence presented allows a reasonable inference that Spirit was negligent in its hiring of Heritage. For any of these reasons, summary judgment is not appropriate on this claim at this time.

**WHEREFORE**, Plaintiff requests for the reasons stated herein that *Spirit's Motion for Summary Judgment* be denied.

Dated: 4 January 2016.

JO ANN PAULI, Plaintiff

BY: s/Richard A. Mincer
**RICHARD A. MINCER, #6-2886**
**TRACI L. LACOCK, #6-4009**
OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff
1720 Carey Avenue, Suite 400
P. O. Box 1083.
Cheyenne, WY 82003-1083
(307) 632-0541

- 17 -

### CERTIFICATE OF SERVICE

I certify the foregoing *Plaintiff's Response to Defendant Spirit's Motion for Summary Judgment* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 4 January 2016, and that copies were served as follows:

James C. Worthen / Andrew F. Sears
Murane & Bostwick
201 North Wolcott
Casper, WY 82601 Sears, Roebuck and Co.

[　] U.S. MAIL
[　] HAND DELIVERED
[　] EMAIL
[ ✓ ] CM/ECF

Keith J. Dodson / Craig Silva
Williams, Porter, Day and Neville P.C.
159 Wolcott
P.O. Box 10700
Casper, WY 82602

[　] U.S. MAIL
[　] HAND DELIVERED
[　] EMAIL
[ ✓ ] CM/ECF

OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff

- 18 -